UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

JASON JAMES and TERESA JAMES,

        Plaintiffs,

   v.

GROUP LIFE AND HEALTH BENEFITS
PLAN FOR EMPLOYEES OF
PARTICIPATING AMR CORPORATION
SUBSIDIARIES; AMERICAN AIRLINES
INC.; and UNITED HEALTHCARE,

        Defendants.

Case No. 3:11-cv-00051 -ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiffs, Jason James ("James") and Teresa James ("Teresa"), allege a claim under the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC § 1132, seeking

payment of medical benefits exceeding $20,000.00 for services rendered to treat an injury

suffered by James's stepson on June 21, 2008.  Defendants are the Group Life and Health

Benefits Plan for Employees of Participating AMR Corporation Subsidiaries ("Plan"), American

Airlines, Inc. ("American Airlines"), James's employer and the Plan's sponsor and administrator,

and United Healthcare, the Plan's claims administrator for Standard Medical Options.

On March 18, 2011, the Jameses dismissed their claim against United Healthcare without prejudice (docket #12). On April 8, 2014, based on the Jameses' Notice of Dismissal (docket #61), this court also dismissed without prejudice all claims against American Airlines (docket #62). The remaining parties, the Jameses and the Plan, have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket #63).

This court has jurisdiction under 28 USC § 1331 and 29 USC § 1132(e)(1) and (f). The Plan has filed a Motion for Summary Judgment (docket #20), and the Jameses also have filed a Motion for Summary Judgment (docket #27).[1] For the reasons that follow, the Plan's motion is DENIED, and the Jameses' motion is GRANTED.

## BACKGROUND FACTS

### I. Plan Documents

The Plan is an employee welfare benefit plan covered under ERISA. Complaint, ¶ 6; Answer, ¶ 6. James has been employed as a pilot for American Airlines since 1998. J. James Decl., ¶ 2. Enrollment in the Plan for himself and his eligible dependents is a benefit of that employment. *Id*.

The terms and conditions under which medical benefits are available to American Airlines pilots and their eligible dependents are contained in the American Airlines Employee Benefits Guide for Pilots ("EBG"). Jameson Decl., ¶ 3 & Ex. A; Supplemental Ex. 64.[2] The Plan sponsor and administrator is American Airlines. EBG, p. 137. Medical and dental benefits

---

[1] As explained below, the standard of review in this case is for abuse of discretion, applied with a level of skepticism due to the Plan's structural conflict of interest. "The Ninth Circuit has often held that in an ERISA benefits case, where the court's review is for abuse of discretion, summary judgment is a proper 'conduit to bring the legal question before the district court.'" *Rabbat v. Standard Ins. Co.*, 894 FSupp2d 1311, 1313 (D Or 2012), quoting *Bendixen v. Standard Ins. Co.*, 185 F3d 939, 942 (9th Cir 1999).

[2] A copy of the entire EBG was submitted as a Supplemental Exhibit (docket #64). The EBG sets forth both the "legal plan documents" and the "summary plan descriptions" for two plans in which pilots are eligible to participate, including the "Group Life and Health Benefits Plan for Employees of Participating AMR Corporation Subsidiaries" (the plan at issue in this case) and the "Long Term Care Insurance Plan for Employees of Participating AMR Corporation Subsidiaries." EBG, p. i.

for American Airlines employees and retirees are self-funded through both American Airlines and employee contributions. *Id*, p. 139. Reviews of benefits decisions under the EBG are handled by American Airlines Human Resources ("Employee Services").

The American Airlines Benefits Strategy Committee oversees the Pension Benefits Administration Committee ("PBAC") which, in turn, is responsible for recommending creation of, maintenance and general governance of employee group benefit plans. Jameson Decl., ¶ 1. The PBAC is the Plan Administrator for purposes of administering Second Level Claim Appeals. EBG, p. 137. The EBG grants to the PBAC "under the authority granted to it by the Board of Directors, through the Chairman, . . . the sole authority to interpret, construe, determine claims, and adopt and/or amend benefit plans." *Id*, p. 138.

Under the Plan, an "eligible dependent" includes a stepchild, if the child lives with the employee, and if the employee, either jointly or individually, claims the stepchild as a dependent on the employee's federal income tax return. *Id*, pp. 14-15. Pilots and their eligible dependents may enroll in a medical plan pursuant to the terms and conditions set forth in the EBG which states the following regarding Proof of Eligibility ("POE"):

> As a reminder, AMR Corporation and its subsidiaries reserve the right to request documented proof of dependent eligibility for benefits at any time. If you do not provide documented proof when requested, or if any of the information you provide is not true and correct, your actions will be considered a violation of the Rules of Conduct and may result in termination of employment, benefit or plan coverage termination, and efforts to recover any unpaid benefits.
>
> Whether you . . . enroll new dependents as the result of a Life Event, [y]ou must submit to HR Employee Services proof of the dependents' eligibility within 30 days of the date your [*sic*] enroll them. Proof that dependents you enroll qualify as your dependents includes (but is not limited to) official government-issued birth certificates, adoption papers, marriage licenses, etc.

*Id*, p. 16.

## II. **The Benefits Dispute**

On August 17, 2007, James married Teresa in Miami, Florida. *Id*, ¶ 3. Teresa had full time custody of a minor son from a previous marriage, Marcel Thibodeaux ("Marcel"). *Id*. Both Teresa and Marcel had been living with James since October 2006. *Id*.

Commensurate with his upcoming marriage, James wished to enroll Teresa and Marcel for both travel discounts with American Airlines and for healthcare coverage with the Plan. *Id*. On July 24, 2007, James contacted Employee Services to determine the procedure to add a new spouse and dependent to his benefits and travel eligibility. Jameson Decl., ¶ 7 & Ex. B. On the day of his marriage to Teresa, James gave their marriage license and a copy of Marcel's high school report card to staff at the hotel where they were staying in Miami and asked them to fax those documents to the Employee Services' fax number. J. James Decl., ¶ 3. The staff returned the documents to James and told him they had been successfully faxed. *Id*.

Employee Services' records indicate that on September 24, 2007, James enrolled both Teresa and Marcel in the Plan, with an effective date of August 17, 2007 (the date James and Teresa were married) by means of American Airlines intranet, known as "Jetnet." Jameson Decl., ¶¶ 7-8 & Ex. C, pp. 2-3. That same day, James removed his ex-wife from coverage, with an effective retroactive event date of January 31, 2005. *Id*, Ex. C. p. 1. United Healthcare issued proof-of-insurance cards for Teresa and Marcel and mailed those cards to them sometime in September 2007. T. James Decl., ¶ 3.

From August 17, 2007, until June 25, 2008, the Jameses were under the impression that Marcel was enrolled in the Plan and received no letters indicating otherwise. *Id*, ¶¶ 4-7; J. James Decl., ¶¶ 4-7. During that time, both Marcel and Teresa flew with American Airlines at discounted rates. T. James Decl., ¶ 3. As discussed in more detail below, the Plan asserts that it

sent three letters to James in September, November, and December 2007, requesting proof of eligibility ("POE") documents for Marcel's enrollment in the Plan and ultimately terminated Marcel's enrollment based on James's alleged failure to provide POE documentation.  Jameson Decl., ¶¶ 9-12.  However, James avers that he did not receive any such letters, and Teresa avers that, to the best of her knowledge, James received no such letters.  J. James Decl., ¶¶ 5-7; T. James Decl., ¶¶ 4-6.

On June 21, 2008, Marcel suffered a compound elbow fracture which necessitated surgery and follow-up care, resulting in medical expenses totaling over $20,000.00.  On June 25, 2008, Teresa learned for the first time when presenting his proof-of-insurance card to a pharmacy that the Plan did not consider Marcel to be enrolled.  T. James Decl., ¶ 3.  That same day, James faxed a letter to Employee Services, stating that he had never received any request for proof of residence for Marcel, advising that on August 17, 2007, he had sent a copy of his marriage license and further advising that he had enrolled both Teresa and Marcel into his flight and medical benefits.  Stanke Decl., Ex. 2, p. 2.

On August 12, 2008, Employee Services responded to James's letter with a First Level Appeal Decision.  *Id*, Ex. 3.  In that decision, Employee Services recounted the history of prior letters it had sent to James, including:  (1) a September 25, 2007 letter "confirming enrollment of your dependent(s)" and advising that POE is required for all individuals enrolled as dependents of health plan benefits; (2) a November 6, 2007 "Proof of Eligibility Status Letter" reminding him of the requirement to verify eligibility of his enrolled dependents; and (3) a "Benefit Cancellation Notice" terminating coverage effective November 1, 2007.  *Id*, pp. 1-2.  Employee Services further advised that the POE documentation he had submitted on June 25, 2008 (Marcel's high school transcript as of June 17, 2008) "now established [Marcel's] eligibility for

Plan benefits" and, therefore, Marcel was "approved for re-enrollment on a go-forward basis" as of June 25, 2008.  *Id*, p. 2.

Ten days later, James submitted an Application for Second Level Appeal to the PBAC asking that Marcel's reinstatement date be retroactive to June 21, 2008.  *Id*, Ex. 4.  On February 12, 2009, the PBAC sent James a letter denying his Second Level Appeal.[3]  Jameson Decl., Ex. D.  That letter recounts the Plan's efforts between August 2004 and May 2005 to verify that all then-enrolled dependents were eligible for coverage and explained that, following that audit, "all employees are required to supply Proof of Eligibility (POE) documentation to Employee Services either when an employee has a Life Event (to add/enroll dependents in health benefit coverage) during Ongoing Benefits Enrollment . . . regardless of whether or not he/she participated in previous eligibility audits . . . ."  *Id*, Ex. D, p. 1.  The letter also indicates that, due to an "automated report error" within Employee Services' system, Marcel's "coverage was allowed to continue" until Employee Services opted to remove Marcel's coverage effective November 1, 2007.  *Id*, p. 5.  Although the Plan re-enrolled Marcel effective June 25, 2008, it refused to make the enrollment retroactive to any date prior to June 25, 2008, and has refused to pay the bulk of the expenses relating to Marcel's elbow surgery.[4]

## STANDARD OF REVIEW

Under 29 USC § 1132(a)(1)(B), a civil action may be brought by a participant to recover benefits due under the terms of an ERISA plan, to enforce rights under an ERISA plan, or to clarify the right to future benefits under an ERISA plan.  Unless inconsistent with ERISA's

---

[3]  For post-service claims, the EBG states that the PBAC will communicate its Second Level Appeal decision in writing "within the 60-day time period allotted for completion of both levels of appeal."  EBG, p. 147.  Because Employee Services received James's First Level Appeal on June 25, 2008, the Plan had until late August 2008 to complete both levels of appeal.  The record is silent on why the PBAC's decision was not communicated until February 12, 2009, nearly eight months after receipt of James's First Level Appeal, and nearly four times as long as the EBG allows for completion of a Second Level Appeal.

[4]  The Plan has apparently also refused to pay expenses totaling $992.00 to treat the elbow injury on or after June 25, 2008, the date on which the Plan re-enrolled Marcel in healthcare coverage.  Plaintiff's Reply in Support of Motion for Summary Judgment (docket #58), p. 2.

objectives, federal common law applies when evaluating claims for benefits. *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F3d 956, 962 (9ᵗʰ Cir 2001).

Under ERISA, a "denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 US 101, 115 (1989). The EBG grants to the PBAC "the sole authority to interpret, construe, determine claims, and adopt and/or amend employee benefit plans." EBG, p. 138. The Plan also grants the PBAC the discretionary authority to "determine the eligibility of any person to participate in or receive benefits under the Plans and to determine if any exceptional circumstances exist to justify any extensions." *Id*. This language is sufficient to grant the PBAC discretionary authority to construe the Plan's terms and to determine eligibility for health benefits under the Plan.

Where, as here, the plan administrator or fiduciary has discretionary authority to determine eligibility for benefits or construe the terms of the plan, the administrator's decision is reviewed for abuse of discretion. *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F3d 863, 866 (9ᵗʰ Cir 2008). Under the abuse of discretion standard, an ERISA plan administrator's decision "'will not be disturbed if reasonable.'" *Stephan v. Unum Life Ins. Co. of Am.*, 697 F3d 917, 929 (9ᵗʰ Cir 2012), quoting *Conkright v. Frommert*, 559 US 506, 521 (2010). Under this deferential reasonableness standard, the plan administrator's decision will be upheld unless it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F3d 666, 676 (9ᵗʰ Cir 2011).

However, where the "same entity that funds an ERISA benefits plan also evaluates claims, . . . the plan administrator faces a structural conflict of interest" which must be taken into account as a factor in the analysis. *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F3d 623, 630 (9th Cir 2009). In that event, "the court must consider numerous case-specific factors, including the administrator's conflict of interest, and reach a decision as to whether discretion has been abused by weighing and balancing those factors together." *Id* (citation omitted). The court must make "something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage under a particular plan and a particular set of medical and other records." *Abatie v. Alta Health & Life Ins. Co.*, 458 F3d 955, 969 (9th Cir 2006).

Here the Plan is funded by contributions from both American Airlines and its pilots. EBG, p. 139. The PBAC, which denied James's Second Level Appeal, is a committee formed by and under the supervision of the American Airlines Board of Directors. Accordingly, the PBAC operates under the type of structural conflict of interest identified in *Abatie*, requiring this court to apply the abuse of discretion standard with "a higher degree of skepticism." *Salomaa*, 642 F3d at 676.

## ANALYSIS

The Plan contends that it is entitled to summary judgment due to James's failure to provide POE for Marcel. On the other hand, the Jameses contend that they are entitled to summary judgment on two alternative grounds: (1) they faxed the POE to the Plan on August 17, 2007, the date they were married; or (2) Marcel met the "Dependent Eligibility Criteria" before June 21, 2008 and the Plan had no authority to condition payment of expenses incurred upon receipt of POE prior to that date. This court concludes that the Jameses are

entitled to summary judgment that the Plan abused its discretion by terminating coverage for an eligible dependent without properly notifying the Jameses of the need for POE verification documentation or the impending termination.

The inquiry in an ERISA case begins with the plain language of the plan, "interpreting it 'in an ordinary and popular sense as would a person of average intelligence and experience.'" *Tapley v. Locals 302 & 612 of Int'l Union of Operating Eng'rs-Emp'rs Constr. Indus. Ret. Plan*, 728 F3d 1134, 1140 (9th Cir 2013), quoting *Gilliam v. Nev. Power Co.*, 488 F3d 1189, 1194 (9th Cir 2007).  The plain language of the Plan contemplates that its coverage will be retroactive to the date of the relevant "Life Event" if enrollment by Jetnet occurs within 60 days of the relevant "Life Event."  EBG, p. 27 ("If you process your Life Event within 60 days of the event, your changes are retroactive to the date the Life Event occurred (or the date proof of good health is approved, as applicable).").

The Plan also requires the employee to submit POE for a dependent within 30 days of the date of enrollment.  *Id*, p. 16.  However, again under the plain terms of the Plan, termination at the end of 30 days without POE is not automatic.  Absent submission of such POE documentation, the plain language of the Plan states that coverage "may" be discontinued, but *only after* the Plan exercises its "request for documented proof of dependent eligibility."  *Id*. Consistent with this provision, enrollment is not automatically terminated 30 days post-enrollment.  Instead, Employee Services' "internal procedure" regarding POE verification "allows the employee approximately 65 days from the dependent's enrollment coverage date to provide the required POE before the dependent's health benefit coverage is actually terminated in the system and a final benefits cancellation letter is sent to the employee."  Jameson Decl., ¶ 9.

The record establishes that as of the date James and Teresa were married on August 17, 2007, Marcel resided with the Jameses and was eligible for coverage under the Plan. The record also establishes that James enrolled Marcel in the Plan by Jetnet on September 24, 2007, within 60 days of the date of the marriage. The Jameses assert that they also sent POE documentation to the Plan that verified Marcel's eligibility on August 17, 2007. The Plan denies receipt of any POE documentation. However, whether or not the Jameses submitted documentation of POE for Marcel at that time, the Plan plainly contemplates that: (1) enrollment, if completed by Jetnet within 60 days of the Life Event (the Jameses' marriage), is retroactive to the date of the Life Event; and (2) termination of enrollment will only take place following a request for POE.

In the context of the EBG terms, the Plan contends that it exercised its right to terminate Marcel's coverage by sending three letters to James. The first is dated September 25, 2007, confirming that Marcel had been enrolled in benefit coverage, requesting that James provide POE, and stating that James would need to send POE for his dependent(s) in order to "continue coverage." The second is dated November 6, 2007, reminding him that he needed to provide POE for Marcel. And the third is dated December 5, 2007, notifying him that Marcel's benefits were terminated due to the failure to provide POE documentation. The Jameses deny that they received any of those three letters.

The difficulty with the Plan's position is that the record contains no admissible proof of the content or the fact of mailing of those three letters. In particular, the Plan has not submitted copies of those three letters (which apparently are not in its file) or an affidavit from anyone in Employee Services attesting to them. The "Case Notes," which extensively document the enrollment of Teresa and Marcel on September 24, 2007, contain no entry documenting any letters purporting to request POE or warning that enrollment would be cancelled. Jameson Decl.,

Ex. C.  Instead, the Plan has submitted the declaration of the PBAC's Recording Secretary, Deborah Jameson, attesting that Employee Services sent the letters and attaching the letter that she signed and sent well over a year later (February 12, 2009) on behalf of the PBAC denying James's Second Level Appeal, which purports to quote and paraphrase the contents of the three letters from Employee Services.  Thus, the only documentary evidence in the record indicating that Employee Services sent the letters consists of the two written decisions denying James's appeals.  For purposes of this case, however, whether Employee Services actually sent those letters is ultimately irrelevant because at least two of those letters were apparently sent to an incorrect – and indeed nonexistent – address.

In its August 12, 2008 denial, Employee Services states that it mailed the letters to James and that "[s]uch letters are sent to each employee's benefits address on record."  Stanke Decl., Ex. 3, p. 1.  However, that denial does not indicate to what address the prior letters were mailed.

That same history is also recounted by Jameson on behalf of the PBAC in its February 12, 2009 denial, although with more detail.  Jameson Decl., Ex. D.  That denial states that Employee Services mailed the September 25, 2007 letter to James's "home address on record (**2751** Summit Dr., Lake Oswego, OR 97034-3637)" and mailed the November 6 and December 5, 2007 letters to his "home address on record."  *Id*, pp. 2-3 (emphasis added).  Yet that same letter also recites that James's "permanent address on record (as of October 13, 2006, through March 28, 2008)" [5] was "**751** Summit Dr., Lake Oswego, OR 97034-3637."  *Id*, p. 3. Although not expressly stated anywhere in the record, it is undisputed that **751** Summit Dr. is not a valid address.  *Also see* T. James Decl., Attachment, p. 11 (docket #32, p. 14 of 29) (United Healthcare EOB dated August 19, 2008 mailed to Marcel at **2751** Summit Dr.).  No explanation

---

[5]  In March 2008, the Jameses moved to Hillsboro.

has been provided as to whether the reference to **751** Summit Dr. is a typographical error in the February 12, 2009 letter or in the Employee Services' records. If the latter, then both the "Proof of Eligibility Status Letter" and "Benefits Cancellation Notice" were mailed to the wrong address, explaining why James never received them. Even if the former, James swears under oath that he did not receive any of the three letters, although he received other mail at that address from American Airlines. J. James Decl., ¶ 10; Stanke Decl., Ex. 7 (1/17/2007 Memo from American Airlines Captain Thomas Hynes).

The Plan seeks to cast doubt on James's credibility by pointing to his June 25, 2008 letter to Employee Services seeking re-enrollment of Marcel, stating that on "Dec 5th Marcel Thibodeaux was not enrolled because of supporting documentation." Stanke Decl., Ex. 2, p. 2. The Plan characterizes this statement as an admission that James knew Marcel was not enrolled based on his receipt of the "Benefits Cancellation Notice" dated December 5, 2007. However, that letter is not a sworn statement and was sent immediately upon learning of the Plan's denial of coverage to Marcel. It appears to be a hastily written letter with the goal of establishing coverage for Marcel as soon as possible and likely based on a discussion with someone at Employee Services as to how to do that. Every other indication in the record supports the conclusion that James and Teresa believed that Marcel was covered beginning in August 2007 and were surprised by the denial of coverage on June 25, 2008. Applying the abuse of discretion standard with a higher level of skepticism, the Plan's lack of proof of mailing the three letters is insufficient to overcome the Jameses' sworn testimony.

This court need go no further than the plain terms of the Plan and the lack of proof that James was properly notified of the need to submit POE for Marcel or of the impeding termination of his health care coverage enrollment. The plain terms of the Plan dictate that

notice and an opportunity to provide any allegedly missing POE documentation will be given before termination of health coverage of eligible dependents who were enrolled within 60 days of the "Life Event" establishing their eligibility.  Based on the evidence in the record, the only reasonable conclusion is that either no such notice was provided or, if any notice was provided, it was sent to an address other than where the Jameses resided and the Jameses never received it.

Accordingly, this court concludes that the PBAC abused its discretion by terminating the health care coverage of Marcel, who was an eligible dependent and enrolled on Jetnet within 60 days of the Life Event that established his eligibility, without properly notifying the Jameses of its intent to disenroll him.

## **ORDER**

Group Life and Health Benefits Plan for Employees of Participating AMR Corporation Subsidiaries' Motion for Summary Judgment (docket #20) is DENIED and Plaintiffs' Motion for Summary Judgment (docket #27) is GRANTED.

The parties shall confer and either:  (1) submit a stipulated proposed form of Judgment for entry by this court; or (2) if unable to reach agreement on or before May 9, 2014, request that the court set a telephone conference to discuss resolution of the remaining issues in this case, including the amount of medical benefits and statutory penalties, if any, payable to plaintiffs.

DATED  April 25, 2014.

s/ Janice M. Stewart

_____

Janice M. Stewart
United States Magistrate Judge