UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


JASON JAMES and TERESA JAMES,

        Plaintiffs,

    v.

GROUP LIFE AND HEALTH BENEFITS
PLAN FOR EMPLOYEES OF
PARTICIPATING AMR CORPORATION
SUBSIDIARIES; AMERICAN AIRLINES
INC.; and UNITED HEALTHCARE,

        Defendants.

Case No. 3:11-cv-00051-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiffs, Jason James and Teresa James, brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC § 1132, to recover medical benefits of $21,874.15 pursuant to a group insurance policy issued by the Group Life and Health Benefits Plan for Employees of Participating AMR Corporation Subsidiaries ("Plan"). On cross-motions for summary judgment, this court reversed the Plan's decision to deny benefits to plaintiffs. Plaintiffs now move for an award of prejudgment interest pursuant to 29 USC § 1132(g)(1).

1- OPINION AND ORDER

"A district court may award prejudgment interest on an award of ERISA benefits at its discretion." *Blankenship v. Liberty Life Ins. Co. of Boston*, 486 F3d 620, 627 (9th Cir 2007) (citations omitted). The exercise of that discretion must be guided by fairness and a balancing of the equities. *Landwehr v. DuPree*, 72 F3d 726, 739 (9th Cir 1995) (citations omitted). The purpose of prejudgment interest is to fully compensate the plaintiff for "the losses incurred as a result of [the defendant's] nonpayment of benefits." *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F3d 974, 988 (9th Cir 2001) (holding that the district court abused its discretion in awarding a 16% prejudgment interest rate on an ERISA award, double the rate of return on defendant's investment portfolio). Fairness and a balance of the equities favors the award of some measure of prejudgment interest to plaintiffs to compensate them for the six year delay in payment of benefits. As explained in *Fleming v. Kemper Nat. Servs., Inc.*, 373 F Supp2d 1000, 1013 (ND Cal 2005), prejudgment interest is appropriate when "[t]here is no evidence that defendants would suffer financial hardship by paying prejudgment interest to [plaintiffs,] nor that any other beneficiary of the plans would suffer as a result." Instead, the issue is the appropriate interest rate to charge the Plan.

"The interest rate prescribed for post-judgment interest under 28 USC § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F3d 1154, 1164 (9th Cir 2001), quoting *Nelson v. EG&G Energy Measurements Grp., Inc.*, 37 F3d 1384, 1391 (9th Cir 1994). "Substantial evidence" for a different rate is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blanton v. Anzalone*, 813 F2d 1574, 1576 (9th Cir 1987) (quotation and citations omitted).

2- OPINION AND ORDER

According to 28 USC § 1961(a), "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment." According to the U.S. Department of the Treasury, the average 52-week Treasury yield was 2.47% on June 23, 2008. Defendant's Request for Judicial Notice (docket #77-2), Ex. A. Using this method of calculation results, according to plaintiffs, in prejudgment interest of $3,719.14. Stanke Decl. (docket #73), ¶ 4, Ex. 16.

Plaintiffs contend that the post-judgment rate under 28 USC § 1961 is insufficient to "compensate [them] for the losses [they] incurred as a result of [the Plan's] nonpayment of benefits." *Dishman*, 269 F3d at 988 (reversing an award of 16% prejudgment interest). Noting that the Federal Reserve has kept interest rates artificially low for years due to the state of the economy, they urge the court to award them prejudgment interest at 9% per year based on the equities of their situation. In support, they have submitted evidence that when their medical creditors sued them in Oregon state court and obtained money judgments for the medical bills that the Plan should have paid, they became liable for pre- and post-judgment interest calculated at 9% per year pursuant to ORS § 82.010. Jason James Decl. (docket 74), ¶ 3. They estimate (but have provided no supporting documentation) that the total amount they paid to finally satisfy this debt in 2013, including principal, interest, late fees, and other fees charged by collection agencies, is approximately $30,000.00. *Id.* In addition, plaintiffs were forced to delay or forego several other important things in their lives over the past six years, including not sending their son to college from 2009 to 2014, not buying a new house until 2014, not buying a new car until 2013, not taking a family vacation since 2008, and forcing Jason James to pick up an extra flight as an airline pilot every month from 2008 to 2013 in order to earn extra money to

3- OPINION AND ORDER

pay this medical debt. *Id*, ¶¶ 2, 4-7. To avoid unjust enrichment and a windfall to the Plan, they argue that the equities dictate that the Plan should be subject to the same 9% interest rate, resulting in an award of prejudgment interest totaling $11,911.49.[1] Stanke Decl., ¶ 3.

The Plan does not dispute plaintiffs' entitlement to an award of prejudgment interest, but contends that the maximum award should be $2,203.80 based on the rate prescribed by 28 USC § 1961. Its calculation is lower than plaintiffs' calculation because it includes an interest rate of 0.14% from November 29, 2011, through December 9, 2013, when this action was stayed by the bankruptcy proceedings involving defendant American Airlines, Jason James's employer and the Plan's sponsor and administrator. That rate was set by the Bankruptcy Court for unsecured claims in its Order confirming the debtor's Chapter 11 Plan. Defendant's Request for Judicial Notice, ¶ 2 & Ex. B. However, the debtor, American Airlines, was dismissed from this case in April 2014 (docket #62), and the Plan is not a party to the Chapter 11 Plan. Stanke Reply Decl. (docket #79), ¶ 3 & Ex. 15. Therefore, the Plan is not entitled to the reduced interest rate on unsecured debts as set forth in the Chapter 11 Plan.

Deviations from the standard Treasury bill rate have been upheld upon a showing that the a plaintiff was required to substitute his or her own personal funds for improperly withheld benefits and that those funds would otherwise have earned returns above the Treasury bill rate. *Blankenship*, 486 F3d at 628 (affirming an award of prejudgment interest at a rate of 10.01%, compounded monthly, where plaintiff was forced to borrow personal funds from a Vanguard mutual fund earning interest at that rate). Such evidence is absent in this case. This is not a situation where plaintiffs were forced to take out loans to cover their expenses. Instead, they

---

[1] This amount is calculated from the date of service for each separate medical bill (extending from June 21 to September 30, 2008) through July 11, 2014, when plaintiffs filed their motion. At plaintiffs' request, the parties have not yet submitted a form of judgment for entry by the court.

4- OPINION AND ORDER

simply did not pay the medical expenses at issue until collection agencies obtained judgments against them.

However, the Plan withheld payment of plaintiffs' benefits for six years which it had the opportunity to invest while leaving them to fend for themselves to pay their medical debt. How much the Plan actually earned on those unpaid benefits is unknown. The court agrees with plaintiffs that it would be inequitable to reward the Plan for wrongfully refusing to pay benefits and potentially earning a higher rate of return by investing those unpaid benefits. However, "prejudgment interest is an element of compensation, not a penalty." *See Dishman*, 269 F3d at 988. Therefore, this court rejects plaintiffs argument that they are entitled to an enhanced rate of interest simply because the Plan may have been unjustly enriched.

Instead, prejudgment interest is intended to account for plaintiffs' losses incurred as measured by the lost investment potential of wrongly withheld benefits. As explained by the Ninth Circuit, the proper method for calculating prejudgment interest on past-due benefits in an ERISA case pursuant to 28 USC § 1961 is to calculate the interest as though plaintiffs had invested the withheld funds at the 52-week Treasury bill rate and then reinvested the proceeds annually at the new rate. *Nelson*, 37 F3d at 1392. This method "reasonably reflects the conservative investment income the plaintiffs would have been able to have earned had they received funds" when they were originally due. *Id*.

Although plaintiffs have not submitted any evidence as to the time value of the benefits improperly withheld from them, they could have invested those funds and earned a rate of return exceeding the interest rate calculated under 28 USC § 1961. Citing the historically and artificially low Treasury Bill rate, other courts have awarded higher interest rates for prejudgment interest in ERISA cases in order to make the plaintiffs whole. *See, e.g.*,

5- OPINION AND ORDER

*Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F3d 675, 686-67 (6th Cir 2013) (district court abused discretion by awarding prejudgment interest at 0.12% rate pursuant to 28 USC § 1961, given defendant's 6.55% rate of return); *Castell v. Metro. Life Ins. Co.*, No. 09-cv-01593-LHK (ND Cal Mar. 22, 2012) (attached to docket #81) (awarding prejudgment interest at 10% rate based on undisclosed equities); *White v. Coblentz, Patch & Bass LLP Long Term Disability Ins. Plan*, No. C 10-1855BZ (ND Cal Aug. 15, 2011) (attached to docket #81) (rejecting plaintiff's requested rate of 10% and instead awarding prejudgment interest at 4% rate "which approximates the interest rates before the recent financial crisis"); *Oster v. Standard Ins. Co.*, 768 F Supp2d 1026, 1039-40 (ND Cal 2011) (declining to award prejudgment interest at 10% rate set by the California Insurance Code or at low .3% U.S. Treasury Rate, and instead awarding 5% rate because "it would be inequitable to reward Standard for wrongfully terminating benefits and to earn a high rate of return investing those unpaid benefits"); *Lested v. Alaris Med. Sys., Inc.*, 2010 WL 1416544, at *2 (SD Cal Apr. 8, 2010) (awarding prejudgment interest rate of 5% as "a reasonable approximation of the time value of the money improperly withheld"); *Smith v. Jefferson Pilot Fin. Ins. Co.*, No. Civ 07-10228-PBS, 2010 WL 818788, at *3 (D Mass Mar. 5, 2010) (citations omitted) (finding the state rate of 12% too high and federal funds rate too low and instead awarding 6%, "the rough average of the prime rate over the relevant period, which better reflects the value of the unpaid money over time").

Here plaintiffs seeks a higher interest rate of 9% based on the interest and fees they have paid to satisfy the debt created by defendant's withholding of benefits. It is not based on the interest rate that they could have earned on an investment of those funds. As noted by one court, "this distinction creates a potential inequity in that well-financed plaintiffs who borrow from their own investment vehicles may recover enhanced interest, while those who must borrow from

a third-party lender may be limited to the statutory rate of return, even if the statutory rate is below that charged by the third-party lender." *Kroll v. Kaiser Found. Health Plan Long Term Disability Plan*, Case No. C 11-03863 JSW, p. 3 (ND Cal June 27, 2012) (attached to docket #81). Nonetheless, this court is bound to follow Ninth Circuit precedent which pegs the allowable prejudgment interest rate to the "investment income the plaintiffs would have been able to have earned had they received funds" when they were originally due. *Nelson*, 37 F3d at 1392.

In this court's view, given the historically low federal funds rate, the prime rate is a reasonably accurate estimate of the investment value of unpaid benefits. The applicable interest rate is the one in effect immediately prior to the date of the wrongful conduct. *Id* at 1391-92. In this case, that wrongful conduct occurred initially on June 23, 2008, when the Plan first notified plaintiffs that it would not cover their son's medical bills. The prime rate was changed to 5.00% on April 30, 2008 and to 4.50% on October 8, 2008.[2] Therefore, during the time period from June through September, 2008, when plaintiffs incurred medical bills that the Plan refused to pay, the prime rate was 5.00%. Accordingly, this court declines to impose the historically low rate under 28 USC § 1961 or Oregon's statutory rate of 9% and instead awards an interest rate of 5% from June 23, 2008, on medical bills due prior to that date and from the due date for each medical bill thereafter (through September 30, 2008) until entry of judgment.

///

///

///

///

---

[2] Available at http://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm (last visited Sept. 17, 2014).

7- OPINION AND ORDER

## **ORDER**

For the reasons set forth above, plaintiffs' Motion for Prejudgment Interest (docket #71) is GRANTED at a rate of 5% per annum.

DATED  September 19, 2014.

                                                    s/ Janice M. Stewart

                                                    Janice M. Stewart
                                                    United States Magistrate Judge